IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ALBERTO LUIS BURGOS, JR.                                                                          PLAINTIFF

v.                    Civil No. 5:22-cv-05052-PKH-CDC

DETECTIVE MICHAEL ROUGHTON;
DETECTIVE JOSHUA BUTLER;
DETECTIVE JOHAS EDGMON;
DETECTIVE AARON RUTLEDGE; and
TECHNICIAN HEATHER BRADSHAW                                                                   DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Alberto Burgos, Jr. ("Burgos"), currently an inmate of the Benton County Detention Center (BCDC), filed this pro se civil rights action under 42 U.S.C. § 1983. Burgos proceeds *pro se* and *in forma pauperis*. Burgos maintains his Fourth Amendment rights were violated by the manner in which a search warrant for his vehicle was executed. Specifically, he maintains the dash, glove compartment, and center console were broken, and the after-market TV/radio was ripped out. Burgos has named as Defendants all personnel present at the execution of the search warrant. Burgos does not challenge the validity of the search warrant.

Defendants have filed a Motion for Summary Judgment, (ECF No. 24), and Plaintiff has responded. (ECF No. 28). The Honorable P.K. Holmes, III, Senior United States District Judge, referred the Motion to the undersigned for the purpose of making a Report and Recommendation. *See* 28 U.S.C. §§ 636(b)(1) and (3).

### I. BACKGROUND

On June 15, 2021, Detective Roughton was notified of a shooting occurring on Ross Road

1

in Sulphur Springs, Arkansas. (ECF No. 26-2 at 4).[1] Specifically, Detective Roughton was informed that Burgos had shot multiple rounds into the vehicle of Stephanie Chevez-Vasquez ("Vasquez"). *Id.* Deputies were attempting to locate Burgos. *Id.* Burgos' vehicle, a 2004 Chevrolet Tahoe, was located at 17013 Ross Road. *Id.*

Detective Roughton interviewed Vasquez and the individual who had been driving her vehicle, Joshua Simon ("Simon"). (ECF No. 26-2 at 2). Vasquez stated they were going to Ross Road to visit her aunt, Annette Edminson ("Edminson"). *Id.* Burgos had been traveling behind them on the road but then passed and stopped in the road. *Id.* As Simon drove past Burgos, Vasquez said she heard Burgos yelling something, followed by multiple gunshots. *Id.* at 5. Both Simon and Vasquez had seen a gun in Burgos' hand and described his vehicle as a maroon-colored Chevrolet Tahoe, body style 1999-2006.[2] *Id.*

On June 17, 2021, Burgos was arrested in Neosho, Missouri, waived extradition, and was transported to the BCDC on June 18, 2021. (ECF No. 26-2 at 6) (ECF No. 26-4 at 22). After describing his prior problems with Simon, Burgos reported that he believed the vehicle being driven by Simon was going to ram him, but he was able to pull to the side of the road. (ECF No. 26-2 at 6-7). As the vehicle started past Burgos, Simon started speaking to him, and Burgos told Simon he did not want to hear anything he had to say. *Id.* at 7. Burgos gave Simon and Vasquez three seconds to leave his property. *Id.* Burgos counted to three and then fired two warning shots in the hood of the car and two warning shots in the trunk. *Id.* Burgos said he was not attempting

---

[1] All citations are to the CM/ECF document and page number rather than to the designation put on the exhibits by the parties.
[2] The record contains significant information about the intertwined relationships between these parties, but this information is not relevant to the issues before the Court.

to kill anyone. *Id.* Burgos was charged with two counts of attempted murder in the first degree, two counts of the unlawful discharge of a firearm from a vehicle, two counts of aggravated assault, criminal mischief in the first degree, and two counts of a terroristic act. *Id.* at 8-9.

On June 16, 2021, a warrant to seize the Tahoe was issued. (ECF No. 26-4 at 121-123). The Tahoe was locked and towed to the Benton County Sheriff's Office. *Id.* at 102, 137 & 141; (ECF No. 26-6 at 33). A warrant was obtained to search the vehicle. (ECF No. 26-4 at 112-114). The warrant authorized a search for clothing, ammunition, handguns, wallet, cellphones, identification, electronic storage devices, receipts, documents, items and papers tending to show use and/or control of said vehicle; trace evidence that includes, but is not limited to, physiological fluids, fibers, fingerprints, footprints, blood; and any other evidence associated with the charges filed against Burgos. *Id.* at 22 & 112-114. Detectives Roughton and Rutledge gained access to the vehicle by using a device to unlock the vehicle. *Id.* at 57-63 & 138. The officers seized a silver iPhone from inside a black backpack on the rear passenger seat and a Missouri vehicle safety inspection slip with Burgos' name on it from the glove compartment. *Id.* at 140. A gunshot residue kit was employed on the driver's door, driver's side A-pillar, and the steering wheel. *Id.* at 22 & 140. An inventory of property taken during the search was prepared in the presence of Detective Butler, Detective Edgmon, Detective Rutledge, and Evidence Technician Bradshaw. *Id.* at 138.

Photographs of the Tahoe taken by Defendants reveal the following: The front driver's and passenger seats have multiple large rips and worn spots; the arm rest for the driver's seat has large rips in the upholstery; the center console did not have a top on it and was so loaded with objects it did not appear a top could have been on it; there was a white case of some type between

3

the back seats; the back seat on the driver's side was missing the head rest; the back seats show wear; the carpet was dirty and stained; the vehicle was littered with objects including multiple items of clothing, water bottles, papers, a back-pack and other items; the luggage area was full of items including a cross-bow, speakers and other electronic items, a gas can, and a large black storage container. (ECF No. 26-4 at 61-101). Photographs of the glove compartment show it both closed and open, and it appears undamaged. *Id.* at 72, 78 &89. With respect to the dash cover, only one photograph depicts it, and it does appear it may be raised slightly or cracked. *Id.* at 78. One photograph shows the area of the dash where a radio would normally be installed. *Id.* at 69. However, the photograph is dark and the area difficult to visualize. *Id.* The Court cannot determine with any accuracy whether the TV/radio is in fact missing.

By affidavit, Detective Roughton says he assisted "Detectives" and "evidence technicians" with the vehicle search. (ECF No. 26-8 at 1). Photographs of the vehicle's exterior and interior were taken prior to the search. *Id.* A vehicle unlock kit was used to gain access; however, Detective Roughton maintains no damage was caused by it. *Id.* Detective Roughton denies causing any damage to the vehicle during the search and states the photographs taken of the vehicle prior to the search show the interior already was damaged. *Id.* at 2. During the search, Detective Roughton states he "did not witness any other members of the Benton County Sheriff's Office cause any damage to the vehicle." *Id.* He asserts he followed Benton County's policy regarding the search of vehicles. *Id.* at 2-3. Detective Rutledge's affidavit mirrors that of Detective Roughton's. (ECF No. 26-9).

With respect to the condition of the vehicle, Defendants have also submitted exhibits showing the Tahoe was searched on April 2, 2021, at the property on Ross Road. (ECF No. 26-

4 at 6). When officers approached the Tahoe on that date, a meth pipe was laying in plain view on the passenger seat. *Id*. The Tahoe was searched and along with the glass pipe there were baggies, two scales, a marijuana grinder, and some seeds. *Id.* Burgos stated the marijuana paraphernalia was his. Another person claimed the meth pipe, baggies, and scales. *Id*. A picture was taken of the front passenger seat showing the meth pipe in plain view. *Id.* at 16. The passenger seat was in poor condition with the upholstery being very worn, having creases, areas where the top layer of the upholstery is worn through with several tears. *Id.*

Burgos has been continually incarcerated since 2021, and as a result, has not personally viewed the Tahoe since it was searched. (ECF No. 26-6 at 13-14). On July 1, 2021, Burgos' mother – Janette Rogge – claimed the vehicle and had it towed to her home. (ECF No. 26-4 at 143). Burgos testified that Rogge did not complain of any damage to the vehicle when she picked it up. (ECF No. 26-6 at 34). According to Burgos, only when Rogge looked through the vehicle after it arrived at her home, did she notice the damage and send him photographs. *Id.* at 13 & 34. She did not report the damage. *Id.* at 34. Rather, Rogge informed Burgos and he reported it. *Id.* Burgos' mother then delivered the vehicle back to the Ross Road address to be stored. *Id.* at 19. From the photographs sent by Rogge, Burgos testified he could determine his seats had been ripped or sliced open, the console broken, the dashboard cover broken, and the TV/radio removed. (ECF No. 26-6 at 24, 26). Burgos says that when the Tahoe was searched in April of 2021, there was no damage to the seats at that time. *Id*. at 25. In fact, Burgos claimed the seats were in "perfect condition." *Id.*

With respect to each of the Defendants, Burgos testified that Defendants "excessively" searched his vehicle and are responsible for the damages. (ECF No. 26-6 at 28-32). Burgos

possesses no photographs of the Defendants in the process of damaging the vehicle but included each of the named Defendants because they were physically present during the search. *Id.* at 28, 35. He has no other evidence to establish who – if anyone – specifically caused the damage. *Id.* With respect to his official capacity claim, Burgos testified that Benton County should have a policy prohibiting excessive searches, but Burgos does not believe Defendants were following a Benton County policy or custom when they caused damage to his vehicle during the search. *Id.* at 37-39.

On March 28, 2022, Burgos reported that the Tahoe had been stolen from the Ross Road residence in Sulphur Springs. (ECF No. 26-4 at 146). Edminson had told Burgos his vehicle was gone. (ECF No. 26-6 at 21). By the time Burgos' deposition was taken on October 18, 2022, the vehicle had been located in an impound lot in Seneca, Missouri. (ECF No. 26-6 at 27-28).

## II.  APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants have moved for summary judgment on the following grounds, saying: (1) The manner in which the search was executed was reasonable; (2) there is no evidence Defendants caused any damage to the vehicle; (3) there is no proof of personal involvement on the part of any of the Defendants; (4) Defendants are entitled to qualified immunity; and (5) there is no basis for an official capacity liability claim.

In general, § 1983 claims involve two essential elements. First, Defendants must act under color of state law. Second, the alleged wrongful conduct must have deprived the plaintiff of a federally protected right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Here, there is no issue as to whether the Defendants acted under color of law. Instead, our inquiry focuses on whether Defendants violated Burgos' constitutional rights. Burgos has sued the Defendants in both their individual and official capacities.

#### A. The Search

The search of the Tahoe was authorized by a warrant based on probable cause. Burgos does

not contest the validity of the warrant. Instead, he contests the reasonableness of the search.

"Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful." *United States. Ramirez,* 523 U.S. 65, 71 (1998). "The general touchstone of reasonableness, *see Pennsylvania v. Mimms,* 434 U.S. 106, 108-09 [] (1997) (per curiam), governs the method of execution of the warrant." *Id.* "[W]hether a search . . . is unreasonable within the meaning of the Fourth Amendment depends on the facts and circumstances of each case." *Cooper v. California,* 386 U.S. 58, 59 (1967).

It is recognized that law enforcement officers "executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States,* 441 U.S. 238, 258 (1979). In other words, "in some circumstances, minor, incidental, or accidental property damage is sometimes an unavoidable effect of a warrant permitted search." *United States v. Wyatt,* No. 16-cr-00057-MSK, 2016 WL 6956632, *8 (D. Colo. Nov. 29, 2016) (citing *Dalia,* 441 U.S. at 258).

The question here is whether the Defendants acted unreasonably in causing property damage during the execution of the warrant. *See.e.g., Cook v. Gibbons,* 308 Fed. Appx. 24, 28 (8th Cir. 2009); *see also Ginter v. Stallcup,* 869 F.2d 384, 388 (8th Cir. 1989) ("[T]he law prohibits unnecessarily destructive behavior while searching a citizen's home"). "The scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and objects of the search, and by the places in which the officers have probable cause to believe those objects may be found." *United States v. Kyles,* 40 F.3d 519, 523 (2d Cir. 1994). "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry of entry or opening may be required to complete the search." *Unites States v. Ross,* 456 U.S. 798, 820-21 (1982) ("Contraband goods

8

rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed in some form of container"). Here, the warrant issued was broad, authorizing a search for small items, including ammunition. The Court turns to an examination of the parties' arguments.

Defendants first argue that Burgos has failed to establish that any of the Defendants personally caused the damage to the Tahoe. Instead, they point to Burgos' testimony that he sued every person present during the search without specific knowledge regarding the individual actions taken by them.

Liability under § 1983 is personal. "By personal, we mean 'a plaintiff must show each individual Defendant's personal involvement in the alleged violation.' It does not follow, however, that a plaintiff must be able to '*personally* identify his assailant [] to avoid summary judgment.'" *Molina v. City of St. Louis, Mo.,* 59 F.4th 334, 344 (8th Cir. 2023) (quoting *White v. Jackson,* 865 F.3d 1064, 1081 (8th Cir. 2017)).

In *White,* one of the plaintiffs brought an excessive force claim against five officers. *Id.* The evidence showed that Officers Vinson and Bates had physically removed the Plaintiff from a culvert; Officer Patterson had deployed pepper spray; and Officer Payne observed the arrest and yelled at the Plaintiff to stop resisting. The Eighth Circuit held this was sufficient evidence to establish the officers had personally participated in Plaintiff's arrest. *Id.* The issues of whether Plaintiff resisted, and the reasonableness of the force used were issues for the jury. *Id.* Officer Jackson did not participate in the arrest and instead only observed it because he was carrying a firearm. *Id.* The Court indicated that while an officer may be held liable for a failure to intervene, Plaintiff had not asserted such a claim. *Id.*

In *Molina*, tear gas canisters were launched from an armored vehicle known as the BEAR during an attempt to break up a protest that had become violent. *Molina,* 59 F.4th at 337. One incident involved a bicyclist, Peter Groce, who followed the BEAR and once it had stopped, approached, and shouted: "Get the fuck out of my park." *Id.* Groce sued the officers in the armored vehicle and their supervisor. *Id.* The officers argued the evidence was not specific enough to show that "any of them *individually* violated Groce's First Amendment rights." *Id.* at 344. Groce could "not identify who launched the tear-gas canister, so in [the officers'] view, no one can be held liable for [Groce's] injuries." *Id.* The Court noted that seven officers were riding in the BEAR when the canister was launched. *Id.* All the officers had access to the tear gas canisters. *Id.* The Eighth Circuit held there was

> enough evidence to establish the "personal involvement" of everyone in the BEAR. To be sure, Groce could not see who launched the tear-gas canister. But with multiple "officers present," the jury could find that each one of them participated in the decision or that one did it "while the other officers failed to intervened."

*Id.* (quoting *White,* 865 F.3d at 1081 and *Velazquez v. City of Hialeah,* 484 F.3d 1340, 1342 (11th Cir. 2007).

Evidence has been submitted showing all five named Defendants participated in the search of Burgos' Tahoe. No affidavits have been filed disputing that. The affidavits of Detectives Roughton and Rutledge merely deny they caused any damage; these two detectives do not maintain they did not participate in the search. No affidavits were submitted by the remaining Defendants. Plaintiff was not able to view the activities of each officer during the search as he was incarcerated. As in *White* and *Molina,* the Court believes there is enough evidence to establish the "personal involvement" of the Defendants.

Turning to the issue of whether damage to the Tahoe was caused by Defendants or was

10

pre-existing, Burgos refers the Court to the vehicle impoundment and inventory record. This record concerns the seizure of the vehicle at Ross Road in Sulphur Springs and its tow to the Benton County Sheriff's Office. (ECF No. 26-4 at 102). In the inventory and condition portion of the form, the only written notation is "taillights broken." *Id.* No items are listed under the heading "major items in vehicle" which is then broken down to "front seat, rear seat, trunk, p.u. bed & misc." No major damage is noted to the "hood, top, l/h, r/h, trunk, misc." *Id.* Burgos contends that because the form only mentions broken taillights, this is proof that the vehicle was in good condition. (ECF No. 28 at 2).

The Court disagrees. This form was completed when Decatur Wrecker towed the vehicle. (ECF No. 26-4 at 102). The form does not ask about the condition of the upholstery, seats, carpeting, dash, radio, head rests, console, etc. The Court has little doubt that the statement about the taillights being broken was written to protect Decatur Wrecker and the Benton County Sheriff's Office from a claim that the exterior of the vehicle was damaged during transport.

Burgos also maintains that the photographs taken by his mother establish the extent of the damage done by Defendants. (ECF No. 26-7 at 1). Defendants reply that the undated and unauthenticated photographs are inadmissible. (ECF No. 25 at 9). Burgos counters, saying he could obtain a written and notarized statement, or witness testimony, if necessary, from his mother.[3] (ECF No. 28 at 3). Even assuming the photographs properly could be considered by the Court on this summary judgment motion, the photographs provide no proof suggesting the Defendants were responsible for the damage depicted; to the contrary, the photographs only document existing

---

[3] In the Order directing Burgos to respond to the summary judgment, he is explicitly told the response "must include legal arguments, as well as affidavits . . . or other evidence establishing that there is a genuine issue of material fact that must be resolved at trial." (ECF No. 27).

damage.

With respect to the earlier search of the Tahoe on April 2, 2021, Defendants have submitted a photograph taken of the front passenger seat. The seat is creased, the top layer of the upholstery is missing in places, and there are tears in the seat. (ECF No. 26-4 at 16). It is clear to the Court that – prior to the June 21, 2021, search – the Tahoe was not in "perfect condition" as maintained by Burgos. Defendants have submitted numerous photographs documenting the condition of the Tahoe prior to execution of the search warrant on June 17, 2021. (ECF No. 26-4 at 57-89). As noted above, the Tahoe's interior was in extremely poor condition prior to Defendants' search. To the extent Defendants caused any damage – which cannot conclusively be ascertained from Burgos' evidence – the Court believes any damage was incidental to the search and reasonable.

The Court believes Defendants are entitled to summary judgment on the grounds that the evidence establishes Defendants caused – at most – incidental damage to the vehicle. Having found no constitutional violation exists, Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

  **B. Official Capacity Liability**

An official capacity claim is considered a claim against the employing governmental entity which, in this case, is Benton County. *Crawford v. Van Buren Cnty.,* 678 F.3d 666, 669 (8th Cir. 2012). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.,* 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted).

Burgos does not contend any of Benton County's policies were unconstitutional. In fact, Burgos contends Defendants violated the policy of Benton County which required them to avoid causing unnecessary property damage during their execution of the search warrant. Burgos points to custom but does not allege a failure to train or supervise claim. There is no basis here for official capacity liability. Moreover, having found that no individual Defendant violated Burgos' federal constitutional rights, no official capacity liability exists. *See e.g., Ivey v. Audrain Cty., Mo.*, 968 F.3d 845, 851 (8th Cir. 2020) (if the individual officers are entitled to qualified immunity under the first prong of the analysis, *i.e.*, no evidence of a constitutional violation, then the county cannot be held liable); *Schoelch v. Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010) (holding that there was no need to consider a pretrial detainee's failure to protect claim against the city when there was no evidence that any of the individual officers committed a constitutional violation). There is no basis for official capacity liability under these facts.

## IV. CONCLUSION

For these reasons, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 24) be **GRANTED,** and this case be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of April 2023.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

13